NATIONAL FACTORS, INC., as Assignee of the Reconstruction Finance Corporation, Respondent, v. PERCY R. HOLFORD, Appellant.

First Department, May 11, 1967.

*Daniel M. Bianca* of counsel (*John J. Killea* with him on the brief; *Mendes & Mount,* attorneys), for appellant.

*David Ray Bernstein* for respondent.

STEVENS, J. Defendant appeals from a judgment entered May 5, 1965, in favor of plaintiff and against the defendant in the sum of $82,535, after trial on an agreed statement of facts.

This action is on two fire insurance policies in the total amount of $100,000, issued by Lloyd's, London, and other British companies (herein jointly referred to as Lloyd's) to Kamen Soap Products Company (Kamen) on or about June 14, 1952, for a three-year term. The named insured was Kamen, the mortgagor, with a loss payable clause to Reconstruction Finance Corporation (RFC) as mortgagee. Plaintiff is the assignee of RFC. The action is to recover for damage to Kamen's property as a result of a fire which occurred July 24, 1954, at which time RFC had a mortgagee interest in the damaged property.

On the effective date of Lloyd's policy there was in effect a policy issued by Liverpool & London & Globe Insurance Company (L&L&G) covering the same property in the amount of $50,000 with Kamen as the named insured and RFC the mortgagee under the standard mortgage clause. The L&L&G policy expired July 26, 1952, and it was renewed for three years from that date. In the standard mortgage clause rider of the L&L&G policy, after the designation of loss payable to RFC, appeared a provision that the insurance, as to the interest of the mortgagee, would not be invalidated by act or neglect of the owner, provided, that in case the owner failed to pay any premium due, the mortgagee, on demand, should pay the same.

Lloyd's policy contained the following provision:

" Warranted same terms and conditions as and to follow the settlements of Liverpool & London & Globe Insurance Company, and that said Company has, at the time of any Loss, and at the same gross rate, at least Fifty Thousand Dollars (subject only to reduction by amount of any loss not reinstated) on the identical subject matter and risk, and in identically the same proportion on each separate part thereof.

" This policy is subject without notice to the same conditions, endorsements, assignments, and alterations of rates as are, or may be, assumed in the above-mentioned Company's Insurance upon which this Policy is based and shall be deemed to include such risks of Lightning and/or Explosion as are included in that Insurance."

The original memorandum of insurance carried a note " any reduction in the amount of the warranted insurance (except by loss) or its termination for any cause, automatically terminates this insurance ".

The L&L&G policy was cancelled for nonpayment of premium, effective December 8, 1952. Notice of such cancellation was given Kamen, and a notice of cancellation dated November 25, 1952, was sent to RFC, the mortgagee. The Lloyd's policy was cancelled November 28, 1952 for nonpayment of premium. It is stipulated notice of such cancellation was not sent to Kamen or RFC, and that at the time of the fire no policy of L&L&G in any amount was in effect on the premises. It is from the judgment entered in plaintiff's favor, after a nonjury trial, that this appeal is taken.

The question is whether compliance with the warranty clause was a condition precedent to recovery under Lloyd's policy, and whether the warranty clause in such policy was binding on the mortgagee under a standard mortgage clause. The answer is in the affirmative.

The original warranty policy was the L&L&G policy. " The effect of the mortgagee clause [in the policies] is to make an entirely separate insurance of the mortgagee's interest " and the mortgagee would take the benefit from such insurance as if he had received a separate policy from the company (*Eddy* v. *London Assur. Corp.*, 143 N. Y. 311, 322; *Savarese* v. *Ohio Farmers Ins. Co.*, 260 N. Y. 45, 51). Under the L&L&G policy there was a reservation of right contained in the standard mortgage clause. Following the loss payable provision it was provided L&L&G " reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee [or

trustee]for ten days after notice to the mortgagee * * *
of such cancellation and shall then cease, and this Company
shall have the right, on like notice, to cancel this agreement."
Consequently, L&L&G's notice of cancellation to RFC became
effective December 8, 1952. No action was taken by Kamen or
RFC to avoid the cancellation.

Cancellation of the L&L&G policy served to deprive Lloyd's
of a protection for which it had contracted and exposed it to a
greater risk than contemplated without any accompanying com-
pensation therefor. It may reasonably be concluded that Lloyd's
premium rate reflected in some measure its risk of loss exposure
and that the parties understood the significance of the require-
ment that the warranty policy be in effect at the time of any
loss.

Lloyd's policy was issued upon the mortgagee's interest, if
any, apparently with the mortgagee's knowledge and consent.
The loss payable clause, the standard mortgage and the war-
ranty clauses were all a part of Lloyd's insurance contract.
Such provisions were not inconsistent or antagonistic to each
other, nor did the loss payable or warranty clause impair the
force of the mortgage clause. Consequently, they should be
held binding upon the mortgagee (see *Eddy* v. *London Assur.
Corp.*, 143 N. Y. 311, *supra*). The contract was a voluntary
one and Lloyd's had the right to fix the terms upon which it
agreed to be bound. It did so by providing specifically that
the continued maintenance of the L&L&G policy in a stated
amount was requisite and payment thereon was to follow settle-
ments of the L&L&G insurance. Compliance with such provi-
sion was a condition precedent to any recovery in event of fire
loss (cf. *Howe* v. *Mill Owners Mut. Fire Ins. Co. of Iowa,* 241
App. Div. 336). When the condition was breached by can-
cellation of the L&L&G insurance without replacement or res-
toration within the permissible time, Lloyd's policy became a
nullity (cf. *Ripley* v. *Ætna Ins. Co.,* 30 N. Y. 136). The liability
of Lloyd's depended upon and followed liability of L&L&G.

It was not requisite that Lloyd's give a separate notice of
cancellation. The essential terms of L&L&G were a part of
Lloyd's and this included as well the notice provision which
could be considered separate and apart from the warranty pro-
vision. There is no dispute that L&L&G properly gave notice
of cancellation. When the owner or the mortgagee, or both,
failed to take some affirmative action Lloyd's policy became
inoperative and void by its own terms. The condition of con-
tinued maintenance of the L&L&G policy was reasonable, con-
sistent, a condition precedent, not antagonistic to the mortgage

clause, and is not dispensed with by the provision that no act or neglect of the owner or mortgagor shall invalidate the mortgagee's interest (see *Rawley* v. *St. Paul Fire & Marine Ins. Co.*, Super. Ct. Eq. No. 80212 [Suffolk County, Mass.] Sept. 19, 1963, FORD, J.; *Romanos* v. *Home Ins. Co.*, Super. Ct. Eq. No. 542274 [Suffolk County, Mass.] Oct. 24, 1962, FAIRHURST, J.; see, also, *Federal Intermediate Credit Bank* v. *Globe & Rutgers Fire Ins. Co.*, 7 F. Supp. 56 as to the purpose and effect of a warranty clause). The so-called separate contract of the mortgagee resulting from the standard mortgage clause cannot serve to endow the mortgagee with invulnerability in light of the plain language and clear meaning of the warranty clause in Lloyd's policy. This is especially true where there is no evidence the parties entertained any intention other than that the ordinary meaning of the language should apply. Moreover, no act of concealment or wrongdoing by Lloyd's misled RFC to its damage.

The judgment appealed from should be reversed on the law, the facts having been considered, and the complaint dismissed, with costs and disbursements to appellant.

BOTEIN, P. J., EAGER, TILZER and RABIN, JJ., concur.

Judgment unanimously reversed, on the law, the facts having been considered, with $50 costs and disbursements to the appellant and the complaint dismissed.