THEODORE NELSON *v.* THE TRAVELERS INSURANCE COMPANY.

October Term, 1942.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 5, 1943.
Opinion on motion to reargue filed February 4, 1943.

*Finn & Monti* for the plaintiff.

*Theriault & Hunt* for the defendant.

JEFFORDS, J. The plaintiff on February 7, 1939, while operating an automobile belonging to Joseph Comolli was involved in an accident from which injuries resulted to two persons, Mavis French and Raymond Blackburn. At the time of the accident the car was covered by a public liability policy issued by the defendant to Comolli. This policy in addition to the standard conditions found in such policies contained the following provision:

> "Such insurance as is afforded by this policy shall exclude any obligation of the company with respect to loss or damage sustained while the automobile is being operated or used by any person other than the Named Assured or members of his immediate family, anything in the policy to the contrary notwithstanding."

Prior to February 7, 1939, the plaintiff had been required to file proof of financial responsibility under the motor vehicle law of this state. Because of this requirement Nelson had obtained a policy of insurance from the Hartford Accident and Indemnity Company which was in force at the time of the accident. This policy covered a car owned by the plaintiff. A rider, with restrictions not here material, was attached to this policy which provided for the payment of all damages for personal injuries imposed by law on the plaintiff arising from his operation of any other automobile.

Both French and Blackburn brought separate suits against Nelson to recover damages for their injuries and Blackburn's father sued for consequential damages. The Blackburn suits were brought December 4, 1939, and that of French on January 18, 1940. The former suits were settled by the Hartford Company under its pol-

icy. French obtained judgment against Nelson which was also paid by that company under its policy. The present action was brought by the plaintiff for the benefit of the Hartford Company to recover the amounts paid by that company in the Blackburn and French cases plus expenses and attorney's fees incurred in connection therewith. Various pleadings were filed by both parties and trial was had by the Court without a jury. Only two material issues were there presented for determination. The first was as to whether there had been a waiver by the defendant of the requirement of written notice of the accident contained in its policy. The second was whether Nelson was a member of the immediate family of Comolli at the time of the accident so as to be entitled to coverage under the defendant's policy. The Court found favorably to the defendant on the first question and adversely to it as to the second. Judgment was entered for the defendant with costs. Exceptions were taken and filed by both parties. We need discuss only those of the plaintiff which both parties concede present solely the issue of waiver.

The facts in the order in which they appear in the findings, pertaining to the question of waiver of written notice are these: Thomas McTigue was at all times material a soliciting agent for the defendant in the employment of Paige & Campbell. This firm were the general agents for the defendant and maintained offices in Barre and Montpelier. McTigue had sold the policy in question to Comolli.

The day after the accident McTigue learned of it from his brother and general gossip, and the major details thereof.

> "Within three days thereafter McTigue met Comolli (not by appointment) and the two had a casual conversation about the accident. This conversation was not intended by Comolli as a notice to McTigue or to the defendant of the accident."

During the conversation McTigue remarked to Comolli that he, McTigue, did not think that the Traveler's policy covered the accident, to which Comolli replied that he, Comolli, knew it did not.

Thereafter, and within a day or two of his conversation with Comolli, McTigue had a talk with Herman Campbell, a member of the firm of Paige and Campbell, wherein McTigue advised Camp-

bell of the plaintiff's accident and the major details thereof and informed the latter that he had talked with Comolli and gave Campbell the substance of that conversation. Campbell told McTigue in substance that the Travelers did not cover the accident and would not be connected with it in any way.

> "McTigue did not intend his conversation with Campbell as official notice of the accident to the defendant company."

Some few days after his talk with Campbell, McTigue and Comolli met (not by appointment) and on this occasion Comolli asked McTigue if he, McTigue, had heard anything from the Travelers to which McTigue replied, "No."

> "There is no evidence tending to show when or in what manner Campbell's disclaimer of defendant's liability was communicated to Joseph Comolli."

At all times material the Travelers kept at the offices of Paige and Campbell printed blanks for reporting to the defendant accidents such as the one in which the plaintiff was involved.

McTigue had authority from Paige and Campbell to do whatever was necessary with respect to the reporting of automobile accidents by assureds, including the furnishing of report blanks to them.

It was the ordinary, but not the exclusive, practice for Paige and Campbell, through McTigue and others, to assist their assureds in the preparation of report blanks, including the bringing to such assureds of the company's official report blank, or directing them to report to the company's office, when such a course appeared desirable. Comolli had, in general, a knowledge of such practice. He knew that his Traveler's policy required a written report of accidents.

> "Joseph Comolli never asked McTigue or Paige and Campbell or the defendant to do anything with reference to the Blackburn and French accidents."
> "No written notice of the accident of February 7, 1939, was given to the defendant or any of its agents by, or on behalf of Joseph Comolli at any time."
> "There was no conduct by the defendant or any of its agents of a character to induce Joseph Comolli

to believe that a written report of the French and Blackburn accidents would not be required."

"The defendant did not waive the policy requirement of written notice."

The first written notice of the accident given to the defendant or any of its agents was by a letter of the plaintiff dated March 5, 1940. It was found that this notice was not given to the defendant as soon as practicable after the occurrence of the accident.

On the afternoon that the writs in the Blackburn cases were served, one Earle Covey, adjuster for the Hartford, telephoned to Birney Hall of Montpelier, Vermont, an adjuster for the company, on behalf of the plaintiff, Nelson, and advised the said Hall, whose duty it was to receive such writs and pass upon coverage made the subject of such suit, for the Travelers, that writs in the Blackburn cases had been served against Nelson, and Covey informed Hall that he, Covey, understood that Nelson was driving an automobile insured by the Travelers at the time that Nelson was involved in the accident in question, and Covey informed Hall that he wanted to know whether or not Hall would take the writ for the Travelers and have the Travelers' counsel enter an appearance and take care of the cases.

Hall at that time advised Covey that he, Hall, did not know too much regarding the circumstances but that he would look into it and advise Covey in a day or so.

A day or two after this telephone conversation Hall called Covey on the telephone and stated that he had checked the Travelers policy and from information Hall had, it didn't appear that there was any coverage under the Travelers policy and the Travelers was not interested in the writs and that the writs did not need to be sent down.

Under the practice of the Travelers as to accidents such as the one involved in this case prior to and at the time of the accident in question and ever since, if Hall, its adjuster, was not consulted in the matter of determining coverage, that matter would be taken care of in the Paige & Campbell office and would go no further than that office.

It was the defendant's position when the letter of March 5, 1940, from Nelson to the defendant was received, that there was no coverage of Nelson under Comolli's policy in the defendant company. This position was adhered to by the defendant com-

pany from the time of the conversation between McTigue and Campbell.

"Joseph Comolli never made any claim against the defendant, or any of its agents, in any way or form, on account of said accident."

The plaintiff has briefed many exceptions. These relate to the findings as made, to the refusal to find as requested, and to questions of evidence. We will consider the exceptions in the order named rather than in their order as set forth in plaintiff's brief. Findings to which exceptions were taken are those above set forth as quoted statements.

The finding that the first conversation between McTigue and Comolli was of a casual nature and was not intended by Comolli as a notice to McTigue or to the defendant of the accident is excepted to on the ground that it is unwarranted by the evidence. This ground is without merit as there was ample evidence to support the finding. That part of the same to the effect that the conversation was casual has for a basis testimony of both McTigue and Comolli. Their meeting, which both referred to as casual, took place at a filling station which was an accustomed gathering place for many who lived near it. When Comolli was asked how he happened to meet McTigue at this place he answered, "Just another accident, I guess, just happened to walk into each other." He was also asked, "And the only thing you ever said to anybody connected with this defendant about that accident was this casual talk you had one morning shortly afterwards, with McTigue, down at that filling station, isn't that the fact about it?" His answer was, "Yes."

The evidence just referred to, together with Comolli's reply that he knew the Traveler's policy did not cover the accident, made in response to McTigue's remark that he (McTigue) did not think it did, fully warranted that part of the finding to the effect that the conversation was not intended by Comolli as a notice of the accident.

■ The plaintiff also relies, in opposition to this finding, on certain testimony of Comolli which the plaintiff refers to as being uncontradicted. This testimony was given at a hearing had as a result of a motion of the plaintiff to re-open the case in order that he might introduce further evidence relating to notice of the acci-

dent to the defendant from Comolli. From the transcript of the proceedings at the hearing on the motion it appears, for reasons not here necessary to set forth, the Court stated that it would view with suspicion anything further that Comolli would testify to in that respect. It is to be noted that at the continued hearing this witness did testify differently in some material respects from what he had previously stated in regard to the subject on which he was being examined. Under these circumstances the Court was not bound to believe his testimony given at this later hearing even though it can be considered as being uncontradicted by any other witness. *Miller* v. *Miller,* 89 Vt 547, 95 A 928; *Carr* v. *Carr,* 100 Vt 65, 71, 135 A 5.

Grounds for the exception to the finding that McTigue did not intend his conversation with Campbell as official notice of the accident to the defendant are, in substance, that there is no evidence to support the finding and that certain testimony of Comolli given at the continued hearing makes this finding unwarranted. This exception also is without merit. The finding was warranted from McTigue's description of the conversation as it appears in the transcript. It is also justified from the finding that the conversation between McTigue and Comolli was not intended by the latter as notice. If Comolli did not intend to give notice of the accident to McTigue then the Court could reasonably infer that McTigue did not intend to give "official" notice in his talk with Campbell. We have already discussed the matter of Comolli's testimony at the continued hearing.

The exception to the finding that there is no evidence tending to show when or in what manner Campbell's disclaimer of defendant's liability was communicated to Comolli is based on several grounds. These are, in substance, that there is no evidence to support the finding; that certain evidence and findings refute it; and that it is immaterial. No evidence is pointed out which contradicts this finding. The plaintiff tenders the transcript to this Court on this point. We have held so many times that we will not search the transcript to find evidence on which to predicate error that citation of cases is unnecessary. The plaintiff refers us to certain evidence and findings which he claims clearly show that Comolli was deceived by the course of conduct adopted by defendant's agents and led to believe that no written notice was required and

that there had been a disclaimer of liability. It is unnecessary to discuss these various claims as none of them touch the subject matter of this finding. Moreover, if this finding be considered immaterial, as claimed by the plaintiff, his exception to it is not for consideration. *University of Vermont* v. *Wilbur's Estate,* 105 Vt 147, 174, 163 A 572.

The grounds of the exception to the finding that Comolli never asked McTigue or Paige and Campbell or the defendant to do anything with reference to the Blackburn and French accident fall generally within the same category as those to the previous finding. Here again, the grounds do not directly touch the subject matter of the finding. They consist of the repetition of an argument that other findings show a waiver and an assertion that there was no duty cast on Comolli to make any demand on the defendant. No reason is shown why this finding was not warranted by the evidence in the case. Nor is error made to appear in regard to it in any other respect.

The finding that no written notice of the accident was given by or on behalf of Comolli is not challenged as being unsupported by the evidence. The grounds of this exception are similar to those to the two preceding findings as they consist of the repetition of the arguments that other findings in the case disclose that the requirement of such notice was waived. These grounds, as we shall later show, are unavailing. Moreover, the plaintiff claims that this finding is immaterial.

The finding that there was no conduct by the defendant or any of its agents to induce Comolli to believe that a written report of the accident would not be required is challenged on the ground that there is no evidence to support it. Here again, the plaintiff tenders the transcript to us. It is also claimed that the finding is contrary to certain uncontradicted testimony of Comolli given at the continued hearing. In addition it is claimed that this finding is contrary to several others but no reason for the conflict is pointed out other than that these other findings show a waiver. What we have already said in regard to similar grounds applies here. This exception is not sustained.

The grounds of the exception to the finding that Comolli never made any claim against the defendants or any of its agents on account of the accident are that there is no evidence in the case to

warrant the finding and that certain uncontradicted testimony of Comolli shows that he did make such a claim. The testimony upon which the plaintiff relies was given by the witness at the continued hearing. As already shown, the Court was not obliged to believe the testimony of that witness given at that hearing though it was not contradicted by another witness. But testimony from this very witness appears in the case which by inference, at least, contradicts his later testimony. We refer to his statement to McTigue that he (Comolli) knew that the policy did not cover. This statement would warrant a finding of disclaimer against the defendant of any liability under the policy and certainly amply justifies the finding in question.

We have now discussed all findings excepted to by the plaintiff which are material to the ultimate finding of non waiver and on which this latter finding is apparently predicated. Before discussing the exceptions taken to the ultimate finding it seems advisable to state generally what we consider to be the plaintiff's position in opposition to that finding and the judgment on which it is based. The plaintiff apparently bases his claim of error in these respects on two broad grounds, or what might be referred to as sets of events. The first has to do with the first conversation between McTigue and Comolli coupled with certain findings to which no exceptions were taken. These latter findings we have already referred to in our treatment of the exceptions to certain other findings and we will discuss them later when we consider the exception to the ultimate finding of non waiver. The second of what we have termed events is that relating to the telephone conversations between Covey and Hall. The claim of the plaintiff is, in effect, that each of these events discloses a notice to the company of the accident and when the latter based its claim of no liability on the ground of no coverage, it made an election and waived its right to rely on any other defense, including the one here in question. This claim for the reasons hereinafter set forth is without merit.

■ It cannot be doubted that the questioned findings, which we have already discussed, fully warrant the ultimate finding of non waiver in so far as the first event is concerned. This is so because they show that no notice, in the required sense of a claim or demand under its policy, was given by Comolli to the defendant of the accident. In *Nadeau* v. *Union Mut. Fire Ins. Co.* 109 Vt 508,

at page 513, 1 A2d 735, at page 737, we stated that: "An insurer is entitled to know that a demand is being made upon it before treating anything that it may say as a waiver." From the findings it is apparent not only did the defendant have no reason to believe from anything that Comolli said to McTigue that a demand was being made upon it for protection under its policy but it had the right to understand that Comolli had expressly disclaimed any right of coverage on account of the accident in question.

The plaintiff urges that various findings show that the defendant through its agents pursued a course of conduct which was intended to induce Comolli to believe that what he had said to McTigue at their first meeting was sufficient notice so that there was no need for him to file a written report of the accident. In support of this claim the plaintiff lays much stress on McTigue's statement to Comolli at the time of their second meeting that he (McTigue) had not heard anything from the defendant. This claim of the plaintiff is eliminated by the finding of no conduct by the defendant to induce Comolli to believe that a written report of the accident would not be required. This latter finding, as we have seen and shall see, stands against the exceptions taken to it. Inasmuch as any question of bad faith, or other similar circumstance, on the part of the defendant is removed from the case by this finding, *Francis* v. *London Guarantee & Accident Co.*, 100 Vt 425, 138 A 780, and other cases cited by the plaintiff on this point, do not apply.

It is apparent from what we have said that the finding of non waiver must stand, as far as the first event is concerned, unless the exception taken to it shows error. The grounds for the exception are numerous. They amount to an argument that certain unexcepted to findings and evidence in the case taken as a whole show conclusively that the Court was in error in making its ultimate finding of non waiver. The evidence relied upon is certain testimony of Comolli referred to as being uncontradicted and certain evidence relating to custom of insurance agents in Barre or its vicinity in respect to accepting other than written notices of accidents. In regard to Comolli's testimony it is sufficient to say that no transcript reference is given. The matter of custom is disposed of adversely to the plaintiff in our treatment of his requests to find. The unexcepted to findings just referred to may be grouped in three

classes. The first has to do with McTigue's statement to Comolli at the time of their second meeting. This has already been disposed of. The second concerns the telephone conversations between Covey and Hall which, as before stated, we consider as the second of two events claimed to show waiver. For this reason we shall treat it independently of the first event. The third group consists of the unchallenged findings having to do with the report of McTigue to Campbell of the first talk with Comolli; the office practice of Paige and Campbell, particularly with reference to their assistance to assureds in preparing written reports; McTigue's authority; and the adherence of the defendant to its position of non coverage. The plaintiff claims that these three groups of findings so conclusively show a waiver that the ultimate finding must be struck. He has also relied in his brief in discussing all or nearly all of his exceptions to the other findings, pertaining to waiver, on this claim as a ground for such exceptions and as a reason why each of these findings should be struck. Inasmuch as we have already ruled against him as to the first group of these findings and have postponed consideration of the second we need now discuss only his said claims as to the effect of the third group. One answer to these latter claims is that none of the findings comprising the third group taken separately or together show a waiver by the defendant of the requirement of written notice. This is so because the findings showing failure to make a claim or demand by Comolli on the defendant for protection under the policy which have for their basis the first conversation between Comolli and McTigue make the findings contained in this third group immaterial as far as the question of waiver based on this conversation is concerned. Until such demand was made, a conversation such as McTigue and Campbell had could only properly be considered as a general talk about a matter of common interest. That the Court recognized this to be true in respect to that conversation is shown by the finding that it was not intended by McTigue as "official" notice of the accident. It also is clear that until a demand was made on McTigue or on defendant and communicated to McTigue his authority in the respect found is immaterial. As to the finding relating to the office practice of Paige and Campbell it is sufficient to say that no necessary inference is to be drawn from it that such practice was indulged in in the absence of some act on the part of an assured leading them to

believe that a demand for protection under his policy was being made. Consequently this finding is not inconsistent with that of non waiver. The finding relating to the maintenance of defendant's position as to no coverage is also immaterial on this issue of waiver because until a demand was made upon it the company was not called upon to take any position as to its liability under the policy and consequently no question of election could well arise until such demand was made. Any question of harm to the plaintiff because the defendant voluntarily took and assumed this position is eliminated by the findings to the effect that there was no evidence tending to show that Campbell's disclaimer of defendant's liability was communicated to Comolli and that there was no conduct by the defendant or its agents of a character to induce Comolli to believe that a written report of the accident would not be required. It is apparent for the reasons heretofore stated that all the findings contained in this third group were immaterial in so far as the matter of waiver based on any of the findings to which exceptions were taken is concerned. We hold that no error has been made to appear in the ultimate finding of non waiver of the policy requirement of written notice in so far as it is predicated on the first conversation between McTigue and Comolli and the matters claimed by the plaintiff to be related thereto.

The plaintiff also excepted to findings 13 and 41. He takes the position in his brief that these findings are immaterial. Inasmuch as they may be so considered, as far as the issue of waiver is concerned, we adopt the plaintiff's claim in this respect and consequently his exceptions to those findings are not for consideration. *University of Vermont* v. *Wilbur's Estate,* 105 Vt 147, 174, 163 A 572.

We now turn to the question of whether the telephone conversations between Covey and Hall so conclusively show a waiver by the defendant of the requirement of written notice as to make erroneous the ultimate finding of non waiver. It is to be noted that these conversations took place about ten months after the happening of the accident. The findings as to these conversations must be considered with that fact in mind. The Court could have fairly and reasonably construed the conversation of Covey as not amounting to a claim or demand on the defendant that it defend the cases under its policy. Covey merely informed Hall that he understood

that the car Nelson was driving at the time of the accident was then insured by the Travelers and asked for certain information from Hall as to the writ and cases. Hall's reply and his later talk with Covey could reasonably have been construed by the trial court to amount to no more than an answer to these questions. The facts here are similar to those in *Nadeau* v. *Union Mut. Fire Ins. Co.,* 109 Vt 508, 1 A2d 735. The main difference is that here we have telephone conversations and there letters were used as the means of communication. In our opinion the conversation of Hall had a few days after his first talk with Covey can no more be considered a waiver than the letter (plaintiff's 9) in the Nadeau case. The reasons stated in that case for the holding apply here.

■ The trial court has not expressly found that what Covey said to Hall is not to be considered as a demand on the defendant but it has found non waiver and rendered judgment for the defendant. This being so, the omission to make such finding is of no consequence as every reasonable intendment is to be made in support of the judgment, *Manchester* v. *Townshend,* 110 Vt 136, 144, 2 A2d 207; and we may presume in its support that the trial court inferred a fact warranted by the facts found. *Eastern States, etc., League* v. *Vail,* 97 Vt 495, 512, 124 A 568, 38 ALR 845. The assumption that the Court inferred the fact in question is warranted by the finding of non waiver, if for no other reason.

■ We have found that none of the exceptions to the ultimate finding of non waiver are availing. Consequently the judgment must stand unless other exceptions, to be taken up, alter the result. This is so because the requirement of written notice is of the essence of the insurance contract and failure to comply with it, unless waived by the company or otherwise set at naught, voids any liability of the company under the policy. *Houran* v. *Preferred Acc. Ins. Co.,* 109 Vt 258, 273, 195 A 253. The policy in the present case provided, "Upon the occurrence of an accident written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable." The remainder of the provision need not be quoted. It is sufficient to say that it is similar to that in the Houran case. In the opinion in that case the requirement of written notice is so fully discussed and the necessity for its fulfillment as a condition precedent to liability of the company under the policy so well set forth as to make un-

necessary repetition herein of any of the principles therein set forth.

What we have said disposes of most of the exceptions to the failure of the Court to comply with certain requests for findings, which are quite as numerous as the exceptions to the findings themselves. Nearly all of the requests in question contain statements which the plaintiff claims would tend to show a waiver of the policy requirement of written notice. Requests for which such claim is made are Nos. 26, 27, 29, 30, 32 and 33. In general the statements contained in these latter requests relate to matters similar to those set forth in findings which were not excepted to and which we have held were rendered immaterial on the issue of waiver by the findings showing a failure to make a claim or demand against the defendant. Consequently there was no error in refusing the above numbered requests. Moreover we have seen that the ultimate finding of non waiver, as well as other findings upon which it is based, must stand. The statements contained in the last mentioned requests are contrary to or inconsistent with such ultimate finding. So for this reason, which is similar to that already given, said statements are immaterial and their refusal as findings was harmless as it is not error to refuse requests inconsistent with the facts found when the findings setting forth such facts are sound as against the exceptions taken to them. *Boyd* v. *Hartford,* 112 Vt 503, 28 A2d 411. See also *Taylor* v. *Henderson,* 112 Vt 107, 117, 22 A2d 318; *Crampton* v. *Lamonda,* 95 Vt 160, 164, 114 A 42.

Requests Nos. 29 and 30 are very lengthy. They each were in part unsound and for that additional reason it was not error to ignore the whole. *McClary* v. *Hubbard,* 97 Vt 222, 240, 122 A 469; *Peck* v. *City Trust Co.,* 104 Vt 20, 29, 156 A 403.

An additional reason for no error in respect to request No. 32 is that the evidence which the plaintiff relies upon in its support is, in so far as such evidence is pertinent to the subject matter of the request, testimony of Comolli given at the continued hearing.

Request No. 34 was for a finding as to a certain section of the Hartford policy, followed by what amounts to a request for a judgment for the full amount claimed. The Court granted the first part of the request but did not grant the prayer for judgment. The grounds of the exception for failure to find for the full amount

as taken and briefed amount to no more than the repetition of the claim that because of certain findings and evidence the Court should find a waiver. For the reasons heretofore stated this exception is not availing.

Requests No. 34 and No. 35 as well as a part of No. 30 ask for findings relating to the practice and general custom of insurance offices in Barre and vicinity in the way of taking oral notices of accidents instead of written notices and reports. It is apparent from plaintiff's brief that the only purpose of these requests relating to custom and usage was to show a waiver of the requirement of written notice. Such findings for the purpose claimed for them by the plaintiff would have been inconsistent with the ultimate finding of non waiver. Another reason why they were properly refused is that no evidence has been pointed out to us by the plaintiff which shows directly or by necessary inference that oral notices of accidents were taken and acted upon by Paige and Campbell or any other insurance agency in that vicinity unless such oral notice gave the agent in question reason to understand that a demand or claim was being made on his company under its policy. Consequently any such custom or usage as the plaintiff claims is shown by the evidence would be immaterial in view of the findings in the present case.

Request No. 44 has to do with the second conversation between McTigue and Comolli in which, in response to Comolli's question, McTigue stated that he had not heard anything from the Travelers. The plaintiff asked the Court to find that "this act of McTigue was authorized by the Travelers, and was made for the purpose of leading Comolli to believe as he did that the company took the position that there was no coverage." There are many reasons why there was no error in refusing this request. A part of it was unsound as no evidence is pointed out nor have we found any to the effect that the defendant authorized this "act". The evidence on which the request is based, according to the plaintiff, is Comolli's testimony at the continued hearing. Finally it is inconsistent with the finding to the effect that there was no conduct by the defendant or any of its agents of a character to induce Comolli to believe that a written report of the accident would not be required. There was nothing in connection with this conversation that compelled the Court to find bad faith on the part of McTigue in making the re-

ply that he did. The Court very apparently drew inferences on this question in favor of the defendant and the plaintiff has shown no reason why we should hold, as a matter of law, that the Court was in error in making such inferences and the finding apparently based on the same.

Request No. 45 is in effect for a finding that because of custom and usage generally, and the defendant's practice in particular, in the way of accepting oral rather than written reports, Comolli was led into believing no written notice was required and thus there was a waiver of the policy requirement. What we have said in regard to the requests relating to custom and usage disposes of that part of this request relating to the same. The remainder of the request is inconsistent with the finding that there was no conduct on the part of the defendant of a character to induce Comolli to believe a written notice of the accident would not be required.

The plaintiff filed what is termed a request for an additional finding. It would seem that it was filed so late that the Court could properly have refused to consider it. However, as it in effect called upon the Court to speculate as to whether the defendant would have altered its position as to no coverage if a written notice of the accident had been given there was no error in the refusal to grant the request.

We have now considered all of plaintiff's requests to which exceptions for refusal to find as requested have been briefed. The result is that no error has been made to appear in any of such refusals.

We finally turn to the plaintiff's exceptions on questions of evidence. The first has to do with the following question asked the plaintiff on direct examination: "Will you tell us what conversation you had with Mr. Carver respecting any suit that might be brought by you against Travelers?" Upon objection this question was excluded.

It does not appear that an offer was made showing what the answer would be to the question and consequently the exception is unavailing. *Smith* v. *Reynolds,* 94 Vt 28, 40, 108 A 697; *State* v. *Noakes,* 70 Vt 247, 256, 40 A 249; *Fuller* v. *Valiquette,* 70 Vt 502, 41 A 579. Moreover it is clear that the plaintiff was not harmed by the exclusion.

The plaintiff excepted to the admission of Nelson's letter

of March 5, 1940, which was admitted as Deft's. Ex. B. Counsel for defendant offered it as indicating an attempt at that time to give notice of the accident. The grounds of the objection were that inasmuch as the plaintiff was not relying on this written notice in support of his claim but on the oral notice given Comolli this letter was immaterial. In support of his exception the plaintiff argues in his brief that apparently the Court based its judgment on the finding that this written notice was not given as soon as practicable after the occurrence of the accident and has ignored the plaintiff's claim of waiver. Both the grounds for the exception stated at the trial and those in support of the same now argued are without merit. The Court could properly receive the letter as evidence tending to show that the plaintiff at that time did not claim that the defendant had waived the requirement of written notice. As to the argument contained in the brief, it is sufficient to say that it should be very apparent from the length of this opinion that the judgment of the lower Court, as we view it, was based in no small part on the finding of non waiver. The numerous exceptions which point to this finding lead us to the conclusion that the plaintiff takes the same view of the matter.

The last exception relates to a question asked Comolli at the continued hearing and refers to the first conversation between the two men. This question was: "If you had not met Mr. McTigue at this place and had the conversation with him, would you have gone to the office of Paige & Campbell and reported the accident?" The plaintiff offered to show that if the witness had not met McTigue he would have gone that day and reported the accident to that office. The question was objected to on the ground that it was immaterial what Comolli would have done if something else had not happened and that the question here was what notice the company had of the accident and not what the witness might have done.

The exclusion of the answer to the question was not error. *Patterson* v. *Smith*, 73 Vt 360, 362, 50 A 1106; *Whitney Wagon Works* v. *Moore*, 61 Vt 230, 236, 17 A 1007; *Palmer* v. *Pinkham*, 33 Me 32; *Learned* v. *Ryder*, 61 Barb., 552.

All exceptions relied upon by the plaintiff have been examined and no error has been made to appear. *Judgment affirmed.*

## ON MOTION FOR REARGUMENT

■ On leave, duly obtained, counsel for the plaintiff have filed a motion for reargument in this case, pending which the entry of judgment has been withheld. This motion consists largely of a restatement of grounds already argued and considered rather than a pointing out to the Court wherein it is claimed that it has misapprehended or overlooked some point which is the office of such a motion, as stated in *Ryan* v. *Orient Insurance Co.* 96 Vt 291, 304, 306, 119 A 423, and in *Goodwin, Admx.* v. *Gaston,* 103 Vt 357, 368, 154 A 772.

The first ground of the motion is apparently directed to the claim that in upholding the finding to the effect that the first conversation between McTigue and Comolli was of a casual nature and not intended by Comolli as a notice to McTigue of the accident we overlooked certain uncontradicted evidence of Comolli to the effect that this meeting was intentional on the part of Comolli. The answer to this claim is that we did not overlook the referred to evidence but, as shown in the opinion, since there was ample evidence upon which to base this finding, the fact that other evidence is in conflict with it cannot avail the plaintiff. *Taylor* v. *Henderson,* 112 Vt 107, 113, 22 A2d 318. The other statements set forth in this first ground consist merely of arguments formerly presented and consequently are not properly before us for consideration on this motion.

The first part of the second ground is based on the proposition that requests for findings Nos. 26, 27, 29, 30, 32 and 33 are supported by uncontradicted evidence and should have been made and that if made, the ultimate finding of non-waiver could not stand. In support of this claim the plaintiff advances nothing except a repetition of arguments previously made.

The second part of this ground has to do with our treatment of the telephone conversation between Covey and Hall. The plaintiff claims, in effect, that what Covey said to Hall so clearly shows a demand under the policy that we should hold it to be such as a matter of law and that in any event, because of this clear showing, it was erroneous to hold that we could presume the trial Court found that what Covey said to Hall was not to be considered as a demand on the defendant for protection under its policy. We were of the opinion, and still are, that it was properly a question of fact

for the trial Court to determine whether or not this conversation should be construed as a demand by Nelson through Covey on the defendant. Nor has anything stated by the plaintiff in this motion led us to believe we were wrong in stating what construction the lower Court could properly have placed .on this conversation. This being so, there is no reason to change our conclusion as to the inference made by that Court of the fact of lack of demand.

In another portion of his motion the plaintiff refers to the letter of March 5, 1940, addressed to the defendant and signed by Nelson. The plaintiff now says that this letter was written by the late Ward Carver as attorney for the plaintiff and was not intended to be sent as a notice of the accident but merely to invoke plaintiff's rights under defendant's policy as a member of the immediate family of Comolli. The defendant says that the letter was written by Covey. As far as the findings show it was written by Nelson but, in any event, it must be considered as stating what the plaintiff desired to be stated. We did not refer to this letter in our treatment in the opinion of the point now under consideration but inasmuch as the plaintiff has mentioned it in this motion we take occasion to point out that it has considerable bearing on the question of whether what Covey said to Hall can be considered as a demand, as a matter of law. The letter starts with a notification of the accident, with a setting forth of the time and place and the parties involved. It is then stated that at the time, Nelson was operating Comolli's car and that the car was covered by defendant's policy, giving its number and the restrictive clause contained therein. It then concludes as follows:

> "This is to advise that I was at the time of the accident a member of the immediate family of Joseph Comolli and that I make claim for any damages sustained against me by reason of the provisions of the policy above outlined, F A —964040."

It is futile for the plaintiff to say that no reasonable inference can be drawn from this letter that Nelson was thereby attempting to give notice of the accident and to claim protection under the policy. It can very properly be asked why, if Nelson was certain that notice had been given and claim made either in the talk between Comolli and McTigue or by the telephone conversation and a waiver given, that he wrote, or caused to be written, the letter in

question. If he was not certain in these respects surely we cannot be required to hold as a matter of law that the telephone conversation constituted a demand. This letter was a significant piece of evidence for the trial Court's consideration on this point. It is true that the plaintiff states he was not relying on the letter at all as notice, but on the talk between Comolli and McTigue; however, as pointed out in the opinion, the letter was properly received in the case and for a purpose which embraced its use as evidence on this question of demand.

While we are on this subject it may be well to note in connection therewith another significant fact which was not referred to in the opinion. Although the findings show that Covey was talking on behalf of Nelson they do not state, nor must it be necessarily inferred therefrom, that Hall knew that Covey was speaking for Nelson. It must be obvious that in order for a demand for protection under a policy to have any legal effect it must be made on the company by some person entitled to protection thereunder or by some one authorized by such person to speak for him who gives the company to understand that he has such authorization.

It should be clear that the opinion in this case is based primarily on the proposition that the findings show either directly, or by reasonable inference, that no demand was made by either Comolli or Nelson, or any one authorized to speak for them, on the defendant for protection under its policy and that under the holding in *Nadeau* v. *Union Mut. Fire Ins. Co.* 109 Vt 508, 1 A2d 735, referred to in the opinion, until such demand has been made no question of waiver can arise, and consequently the ultimate finding of non-waiver was warranted. It may be, however, that certain language unnecessary to the decision in the case, used in our treatment of the matter of the telephone conversation has operated to cause confusion in this respect, so that portion of the opinion has been revised and condensed and, it is hoped, clarified.

The third ground of the motion relates to what we held in the opinion in respect to request No. 44. The only statement which requires consideration is one to the effect that this request should have been granted because it was required by the finding that McTigue had authority from Paige and Campbell to do whatever was necessary with respect to the reporting of automobile accidents by assureds. It seems clear that the only reasonable construc-

tion to be placed on the finding relied upon by the plaintiff is that McTigue's authority extended only to the assistance in the way of making out reports to assureds who had made a demand on his company. In any event, no such broad scope of authority can reasonably be found from this finding as would be necessary to warrant the statement contained in No. 44 that the Travelers authorized McTigue's "act". If any additional reason be necessary for a holding that the Court was correct in refusing this request it is found in the fact that a part of this request, other than the one referred to in the opinion, was unsound. The part which we now refer to is that which assumes Comolli "had given oral notice of the accident" to McTigue at the time of their first conversation.

The fourth ground of the motion has to do with the last exception considered in the opinion. The plaintiff says that in holding there was no error in excluding the question we have misinterpreted the holdings in the two cases from this Court which we cite and have, in effect, established a rule that intent cannot be shown by direct testimony. In order to put to rest any such claim, we take occasion to state that we did not intend to and have not laid down a rule that intent, under the proper circumstances, cannot be shown.

When we wrote the opinion it did not seem necessary to say more than we did in our treatment of this exception but in order to avoid any misunderstanding as to the basis of our holding it seems worth while to recite fully what appears in the transcript relating to this matter. The question was asked Comolli on direct examination by counsel for the plaintiff at the continued hearing. The question and discussion concerning it appears as follows:

> "If you had not met Mr. McTigue at this place and had the conversation with him, would you have gone to the office of Paige and Campbell and reported the accident?
> Mr. Hunt: I object to that question.
> The Court: Sustained.
> Mr. Monti: We offer to show in connection with this, your Honor, that if this witness had not met Mr. McTigue there, that he would have gone that day and reported the accident to the office of Paige and Campbell. I think that is proper.

The Court: What do you want to say on that, Mr. Hunt?

Mr. Hunt: Seems to me it is entirely immaterial what he would have done if something else hadn't happened or had happened, or if this hadn't happened. We are dealing here with a question of fact, what notice this company had of this accident, not what he might have done.

The Court: Yes, that is the view we take of it; what he might have done had he not done as he did do, doesn't seem to us to be material.

Mr. Monti: The Court may be right about that, but I would like an exception.

The Court: We will note your exception.

Mr. Monti: And in connection with that we make the offer I have already indicated.

The Court: Your exception is predicated upon the grounds you stated in your offer."

It is apparent from the foregoing that the objection to the question was based on the ground that the answer would necessarily be based on speculation of the witness as to what he would have done, and at a time long past, and consequently the answer would be immaterial. It is equally apparent that the Court also took this view of the question and the ground of the objection. Counsel for the plaintiff indicated to the Court that he thought it might be right. No reason was stated by counsel in opposition to the objection or the ruling of the Court and the only ground for the exception was that saved the plaintiff by the Court. This ground did not go beyond whatever was implicit in the plaintiff's offer.

It seems clear that the purpose of this question and offer was to lay the foundation for a claim of estoppel. But there was nothing said by McTigue to Comolli during their first conversation which could constitute the basis for such a claim. McTigue's statement cannot reasonably be construed as having had the effect of stopping Comolli from going to the office of Paige and Campbell for the purpose claimed by the plaintiff, or for any other purpose material to the issue in this case and Comolli's reply shows that it had no such effect on him. This ground of estoppel was the only one that could reasonably be implied from the offer. Otherwise, as far as pointed out to the Court, the question called for mere specu-

lation or conjecture on the part of the witness. These are the circumstances disclosed by the record which confronted the trial Court when it made its ruling and consequently were the ones considered by us when the opinion was written. The cases cited in the opinion are ample authority for our holding that the ruling of the Court was correct under the situation presented by the record.

The plaintiff in his brief on argument attempted to support his claim of error on the ground that the question bore on the matter of reliance of both Comolli and McTigue in respect to their first conversation. In his brief on the motion he states that it was admissible as showing motive or intent on the part of Comolli in his first talk with McTigue. In his supplemental brief on the motion the plaintiff confines himself to the ground of intent. Inasmuch as none of these grounds were urged below we will not consider them here. *Capital Garage Co.* v. *Powell,* 98 Vt 303, 311, 127 A 375; *Gover* v. *Central Vt. Ry. Co.* 96 Vt 208, 217, 118 A 874; *Morgan* v. *Gould,* 96 Vt 275, 279, 119 A 517; *Bradley* v. *Blandin & Somerset Land Co.* 94 Vt 243, 255, 110 A 309.

The fifth ground of the motion finds fault with a statement in the opinion in the discussion of the finding that Comolli never made any claim against the defendant. The portion complained of is as follows: "This statement (referring to that of Comolli to McTigue that he [Comolli] knew that the policy did not cover) would warrant a finding of disclaimer against the defendant of any liability under the policy and certainly amply justifies the finding in question." The plaintiff says that by this statement we are laying down a rule that Comolli could waive Nelson's rights under the policy. It is impossible to see how the plaintiff could have so construed this language. We were not talking about waiver by any one but were merely showing that the finding in question was amply supported by the evidence. What we said as to a finding of disclaimer was not strictly necessary but was put in as an indication that the finding could have been stronger as to non claimer than it was.

The sixth ground of the motion merits no consideration as it consists either of reargument or reference to certain testimony of Comolli which it is claimed we overlooked, without stating what part of the opinion, if any, was affected by the claimed oversight.

The plaintiff states as a general ground for the granting of his motion that he had no opportunity on oral argument to discuss

the findings and his requests to find which were not granted by the lower Court. Counsel for the plaintiff was not refused any further time for oral argument which was had as to the facts as found. Counsel voluntarily stated that inasmuch as the claimed errors for refusal to find were so fully briefed, he was satisfied to leave that question on the briefs. All matters were fully briefed and due consideration has been given to all the claims of error on this question of waiver which have been presented to us. In our opinion no good purpose would be served in granting the motion on this general ground.

*Motion for reargument denied. Let full entry go down.*